UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THYNANCY NGUYET LUU-FRIDAY,<br>Plaintiff,<br>v.<br>NANCY A. BERRYHILL,<br>Defendant. | Case No. 17-cv-07182-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 18, 23 |

Plaintiff Thynancy Nguyett Luu-Friday seeks social security benefits for a combination of mental and physical impairments, including: lower back pain, arm and hand pain and numbness, sleep disorder, chronic headaches, depression, and anxiety. (Administrative Record ("AR") 231 & 254.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying her benefits claim. Now before the Court are Plaintiff's and Defendant's motions for summary judgment.[1] (Dkt. Nos. 18 & 23.)[2] Because the Administrative Law Judge's treatment of the medical opinion evidence constitutes reversible legal error, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings.

## LEGAL STANDARD

A claimant is considered "disabled" under the Social Security Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 9 & 10.)
[2] Record citations to "Dkt. No." are to material in the Electric Case file ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1 reason of any medically determinable physical or mental impairment which can be expected to
2 result in death or which has lasted or can be expected to last for a continuous period of not less
3 than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be
4 severe enough that she is unable to do her previous work and cannot, based on her age, education,
5 and work experience "engage in any other kind of substantial gainful work which exists in the
6 national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: "(1) whether the claimant is 'doing substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work'; and (5) whether the claimant 'can make an adjustment to other work.'" *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a)).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). As explained by the Ninth Circuit, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* In other words, if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted). However, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.*

A court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo v. Berryhill*, 871 F.3d

664, 675 (9th Cir. 2017).

**PROCEDURAL HISTORY**

In April 2014, Plaintiff filed an application for Social Security Disability Insurance Benefits under Title II of the Social Security Act. (AR 21 & 203.) Plaintiff alleged disability beginning November 4, 2013 caused by a fall resulting in chronic low back pain and headaches, among other conditions. (AR 59, 203.) Her application was denied initially and on reconsideration. (AR 21.) Plaintiff then filed a request for a hearing before an ALJ. (*Id.*) On July 26, 2016, a hearing was held before ALJ Mary P. Parnow, in San Francisco, California, during which both Plaintiff and vocational expert ("VE") Susan T. Moranda testified. (AR 55.)

**I.     The ALJ's Findings**

On November 2, 2016, the ALJ issued a written decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Social Security Act and its regulations taking into consideration the testimony and evidence, and using the SSA's five-step sequential evaluation process for determining disability. (AR 21-30.)

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since November 4, 2013, the alleged onset date, through her date of last insured of March 31, 2015. (AR 23 (citing 20 C.F.R. 404.1571 et seq).)

At step two, the ALJ determined that the objective medical evidence indicated that Plaintiff's degenerative disc disease of the cervical and lumbar spine, history of migraine headaches, and history of myofascial syndrome constitute "severe impairments" within the meaning of the regulations. (AR 23 (citing 20 C.F.R. 404.1520(c)).) The ALJ determined that Plaintiff's endometriosis and allergic rhinitis were not severe because her treatment records did not reflect ongoing issues. (*Id.*) Similarly, the ALJ found that Plaintiff's "medically determinable mental impairments of adjustment disorder NOS, depression and anxiety, considered singly and in combination, did not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and were therefore nonsevere." (*Id.*)

At the third step, the ALJ concluded that Plaintiff "did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (AR 25 (citing 20 C.F.R. 404.1520(d), 404.1525 and 404.1526).) In reaching this conclusion, the ALJ considered Plaintiff's MRI scans and clinical findings, and determined that "[a]lthough [Plaintiff] has impairments, which are considered to be 'severe,' they are not attended, singly or in combination, with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in the Listing of Impairments." (*Id.* (citing 20 C.F.R. Part 404, Subpart P, Appendix 1).)

In between steps three and four, the ALJ considered Plaintiff's residual functional capacity ("RFC") and concluded that Plaintiff retained the RFC to perform light work with the following limitations:

> Lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk four hours in an eight-hour day; sit six hours in an eight-hour day; never climb ladders, ropes or scaffolds; occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl; and avoid moderate exposure to unprotected heights and hazardous machinery.

(AR 25.) The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (AR 26.) The ALJ noted that while "objective diagnostic studies . . . substantiate severe musculoskeletal impairments" following Plaintiff's claimed injury in August 2012, "the record contains scant treatment notes for 2013, and in September 2012, she had clinical findings of normal strength in the upper and lower extremities, normal range of motion, normal gait, normal mood and appropriate affect." (AR 26-27.) The ALJ discussed subsequent treatment notes and found that they "document inconsistent clinical findings regarding [Plaintiff's] musculoskeletal impairments," and "[c]ontrary to [Plaintiff's] alleged symptoms and limitations," Plaintiff was able to perform physical activities and work after the date of alleged onset. (AR 28.) The ALJ afforded "little weight" to the statements from Plaintiff's spouse, finding them "inconsistent with treatment notes, clinical findings, objective diagnostic studies and [Plaintiff's] activities." (AR 29.)

As for the medical opinion evidence, the ALJ afforded "some weight" to the opinions of

4

the non-examining "State agency physicians and consultants who completed the disability determination explanations . . . because the record supports their assessments." (AR 28.) The ALJ afforded little weight to the opinion of examining psychiatrist Dr. Janine Marinos "because the record lacks mental health treatment notes, [Plaintiff] had normal clinical findings, [Plaintiff] denied having depression or anxiety and [Plaintiff] subsequently worked." (*Id.*) Similarly, the ALJ gave little weight to the opinion of examining physician Dr. Todd Gravori regarding his diagnosis of radiculopathy because "the MRI scan of the lumbar spine revealed no evidence of nerve root impingement; [Plaintiff] previously denied radicular symptoms; [Plaintiff] was able to heel and toe walk with no difficulty; [Plaintiff] had normal gait; and [Plaintiff] had 5/5 motor strength in the lower extremities." (*Id.*) The ALJ purportedly afforded "significant weight" to the opinions of Plaintiff's treating sources, excepting the opinions of Dr. George David (treating psychiatrist), Dr. C. Chin-Garcia (attending physician of treating Sutter Health physicians), and Dr. Warren Strudwick (treating orthopedist).[3] (AR 29.)

At step four, the ALJ found that "[t]hrough the date last insured, [Plaintiff] was capable of performing past relevant work as a check cashier" because "this work did not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity." (AR 29-30 (citing 20 C.F.R. 404.1565).)

At step five, the ALJ found that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from November 4, 2013, the alleged onset date, through March 31, 2015, the date last insured." (*Id.* at 30 (citing 20 C.F.R. 404.1520(f)).)

**II.    The Appeals Council**

Plaintiff filed a request for review on December 27, 2016 arguing that the ALJ's decision was "based on legal error and not supported by substantial evidence." (AR 200.) On November 7, 2017, the Appeals Council denied Plaintiff's request for review making the ALJ's decision final. (AR 1-4.)

//

---

[3] The ALJ did not identify the specific opinions of Plaintiff's treating sources to which she afforded "significant weight."

### III. This Action

Plaintiff commenced this action for judicial review on December 18, 2017, pursuant to 42 U.S.C. § 405(g). (Dkt. No. 1.) Plaintiff then moved for summary judgment, (Dkt. No. 18), and the Commissioner filed her cross-motion, (Dkt. No. 23).

## DISCUSSION

Plaintiff raises five primary issues with the ALJ's decision. First, Plaintiff insists that the ALJ erred in evaluating the medical opinions. Second, Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility. Third, Plaintiff insists that the ALJ's assessment of Plaintiff's residual functional capacity was not supported by substantial evidence. Fourth, Plaintiff contends that the ALJ failed to pose proper hypotheticals to the vocational expert that considered all of Plaintiff's severe and non-severe impairments. Finally, Plaintiff maintains that the ALJ erred in finding that Plaintiff's mental health conditions were non-severe impairments.

### I. Evaluation of Medical Opinion Evidence

#### A. Legal Standard

Courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examiner nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Further, "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

If a treating physician's opinion is not afforded controlling weight, the ALJ must weigh the opinion "according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with

the record, and specialization of the physician." *See Trevizo*, 871 F.3d at 675 (citing 20 C.F.R. § 404.1527(c)(2)-(6)). Failure to consider the factors listed under 404.1527(c)(2)-(6) "alone constitutes reversible legal error." *Id.* at 676.

An ALJ may reject the "uncontradicted opinion of a treating or examining doctor" only by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks and citation omitted). And "[e]ven if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830 (citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986), *superseded by statute on other grounds as recognized in Bunnell v. Sullivan*, 912 F.2d 1149, 1154 (9th Cir. 1990). Likewise, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31. The opinions of non-examining physicians may "serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Ultimately, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Thus, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014). In conducting its review, the ALJ must consider the entire record and cannot rely only on portions of the record while ignoring conflicting evidence. *See Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (finding error where "ALJ selectively relied on some entries in [plaintiff's] records from San Francisco General Hospital and ignored the many others that

7

indicated continued, severe impairment.").

### B. The ALJ Erred in Evaluating Medical Opinions of Treating Physicians

#### 1. Dr. Chin-Garcia

The ALJ failed to follow the required methodology for weighing the opinion of treating physician Dr. C. Chin-Garcia, who opined that Plaintiff had functional limitations due to severe back pain and chronic migraines "that precluded the performance of full-time, sedentary work." (AR 29 (citing AR 639-41).) The ALJ stipulated at the July 2016 hearing that if she accepted Dr. Chin-Garcia's opinion, "there'd be no work [in the national economy]" for Plaintiff. (AR 76 (referencing Dr. Chin-Garcia's medical source statement at AR 639, Ex. 16F).)

As previously discussed, if a treating physician's opinion is not afforded controlling weight, the ALJ must weigh the opinion "according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *See Trevizo*, 871 F.3d at 675 (citing 20 C.F.R. § 404.1527(c)(2)-(6)). Here, the ALJ's rejection of Dr. Chin-Garcia's opinion consists of one paragraph, stating, in its entirety:

> In July 2016, C. Chin-Garcia, M.D., the claimant's treating source, completed a medical source statement and opined that the claimant had limitations that precluded the performance of full-time, sedentary work. The opinion of Dr. Chin-Garcia is given little weight for the following reasons: treatment notes and clinical findings, as discussed [previously], do not support her opinion; objective diagnostic studies are inconsistent with the claimant's reported radiculopathy; and the claimant's activities contradict her opinion.

(AR 29 (internal citations omitted).) The ALJ's decision contains no further discussion of Dr. Chin-Garcia's treatment of Plaintiff regarding "the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of [her] opinion." *See Trevizo*, 871 F.3d at 676. This is especially troubling given the extensive treatment records from Sutter Health treating physicians between 2013 to 2015 showing treatment for chronic migraines and back pain, among other issues. (*See* AR Exs. 11F, 12F, 14F, 15F.)

Thus, in assigning "little weight" to Dr. Chin-Garcia's opinion, the ALJ failed to "apply the appropriate factors in determining the extent to which the opinion should be credited." *See*

8

*Trevizo*, 871 F.3d at 675. As in *Trevizo*, "[t]his failure alone constitutes reversible legal error." *See id.* at 676. Further, the ALJ failed to offer "specific and legitimate reasons" for rejecting Dr. Chin-Garcia's opinion. *See Lester*, 81 F.3d at 830 (citation omitted).

### 2. Dr. Strudwick

The ALJ similarly failed to follow the required methodology for weighing the opinion of treating physician Dr. Strudwick, who "opined that Plaintiff was unable to perform full-time, sedentary work" due to her low back condition. (AR 29; Ex. 18F.) Again, the ALJ stipulated at the July 2016 hearing that if she accepted Dr. Strudwick's opinion "there would be no work in the national economy." (AR 76 (referencing Dr. Strudwick's medical source statement at AR 648, Ex. 18F).) The ALJ ultimately assigned "little weight" to Dr. Strudwick's opinion, stating:

> In March 2014, Dr. Strudwick opined that the claimant was limited to lifting 10 pounds and that she was unable to lift, pull, or reach. (Exhibit 1F) In October 2014, Dr. Strudwick opined that it was unlikely that the claimant would be able to bend, stoop, squat and perform any sort of heavy lifting because of her back symptoms. (Exhibit 6F) In July 2016, Dr. Strudwick completed a medical source statement, in which he opined that the claimant was unable to perform full-time, sedentary work. (Exhibit 18F) Similarly, the opinion of Dr. Strudwick is given little weight for the following reasons: treatment notes, objective diagnostic studies and clinical findings do not support his opinion; the claimant received conservative treatment; his opinion is based on the claimant's subjective complaints; his recommendation that the claimant should continue performing core strengthening exercises is inconsistent with the drastic limitations set forth in the medical source statement; and the claimant's activities contradict his opinion.

(AR 29.) The ALJ's opinion, however, selectively discusses or ignores the following treatment notes from Dr. Strudwick that appear to support his opinion:

**February 10, 2014**: Plaintiff reported "daily and almost constant" pain in her neck following her fall in August 2012. (AR 375, Ex. 1F.) Plaintiff also complained of "intermittent pain" in her lower back "with bending, stooping and squatting." (*Id.*) Further, Plaintiff reported "headaches occur[ring] every other day . . . last[ing] four to five hours in duration." (*Id.*) On examination, Dr. Strudwick noted muscular pain and tenderness in Plaintiff's neck, and "loss of lumbar lordosis" and "positive straight leg raising tests on the left, both sitting and standing, and bilateral straight leg raising tests

9

sitting." (AR 376, Ex. 1F.) Dr. Strudwick noted an MRI on December 27, 2013 of Plaintiff's cervical spine indicating "disc bulges at C5-6, C6-7 and C7-T1 with degenerative disk space narrowing at C5-6 with a midline disk protrusion at C7-T1." Further, Dr. Strudwick noted x-rays of the lumbar spine taken November 8, 2013, that "demonstrate[d] L5-S1 grade 1 spondylolisthesis with L4-5 disk space narrowing." (*Id.*) Neck x-rays taken the same day "demonstrate[d] a reverse of [Plaintiff's] cervical lordosis with decreased disk height and degenerative change at C5-6 and C6-7." (AR 377, Ex. 1F.) Dr. Strudwick diagnosed Plaintiff with "[m]yofascial syndrome, upper trapezius," "[c]ervical spine degenerative joint disease with overlying myofascial syndrome," "degenerative joint disease, lumbar spine, with overlying myofascial syndrome, no radiculopathy," and "[c]hronic headaches associated with degenerative joint disease, cervical spine, and neck spasm." (*Id.*)

**March 31, 2014**: Plaintiff "continue[d] to complain of neck pain and decreased range of motion of her neck." (AR 373, Ex. 1F.) Further, Dr. Strudwick noted Plaintiff's complaints of "ongoing symptoms with tenderness and pain," as well as "severe chronic and repetitive headaches." (*Id.*) On examination, Dr. Strudwick noted "mild limitation of range of motion of her cervical spine with persistent C2 to C7 paraspinous muscular tenderness and upper trapezial tenderness bilaterally." (*Id.*) An MRI of Plaintiff's lumbar spine "demonstrate[d] multilevel degenerative disk disease." (AR 374, Ex. 1F.) Dr. Strudwick opined that Plaintiff was "unable to perform her full and customary duties as a manager at Circle K, which requires her to do lifting, bending, stooping, prolonged standing and prolonged walking." (*Id.* (emphasis added).)

**March 31, 2014**: Dr. Strudwick signed an "Unable Spouse Medical Form," which was submitted to the City and County of San Francisco Department of Human Services, regarding Plaintiff's duties as a caregiver to her disabled spouse, Perry Friday. (AR 378, Ex. 1F.) The form indicates that Plaintiff was "unable to perform some of the household tasks required by [her] disabled spouse[,]" including: "ordinary housekeeping, changing

bed linen, preparing light and main meals, dishwashing and meal cleanup, routine laundry and mending, incontinence laundry, grocery shopping, running errands, and escorting [her] spouse to medical appointments." (*Id.*) The form includes Dr. Strudwick's diagnosis of Plaintiff's "lumbar degenerative joint disease," and notes further limitations caused by pain associated with "headaches [and] low back pain," and bilateral "upper trapezial pain." (*Id.*) Dr. Strudwick opined that Plaintiff would be unable to "lift, pull, [or] reach" for a duration of "3-6 months." (*Id.*)

**April 2, 2014**: Plaintiff received physical therapy on referral from Dr. Strudwick, who had diagnosed Plaintiff with "myofascial cervical and lumbar spine pain." (AR 380, Ex. 1F.) After examination, the physical therapist offered the following assessment:

> [Patient] presents with limited [range of motion], pain, LE weakness, impaired posture, and joint hypomobility of the lumbar spine. [Patient] with signs and symptoms consistent with possible disc involvement and possible facet joint pathology. She will benefit from core and proximal strengthening/stabilization, improved flexibility of the hams and quads, and postural/body mechanics education.

(*Id.*)

**April 25, 2014**: Plaintiff completed physical therapy the day before. (AR 372, Ex. 1F.) On examination, Dr. Strudwick noted: "The range of motion of her cervical spine has improved," and "[s]he has full range of motion with no pain with range of motion." (*Id.*) However, "[p]hysical therapy has not really helped her headaches." (*Id.*) Dr. Strudwick noted that Plaintiff was "going to continue with her physical therapy for her cervical spine." (*Id.*)

**May 5, 2014**: On referral to neurologist Dr. Brian Richardson by Dr. Strudwick, Plaintiff reported migraine headaches occurring "3-6 times each week," with a duration "between 4 hours and all day." (AR 385, Ex. 1F.) Plaintiff complained of insomnia caused by her headaches. (*Id.*) Dr. Richardson diagnosed Plaintiff with migraine headaches and prescribed daily medication. (*Id.* at 387.)

**May 19, 2014:** Dr. Strudwick examined Plaintiff and diagnosed her with cervical and low back pain, lumbar spine disk herniation, and "persistent cephalgia with resolving migraine headaches." (AR 472, Ex. 8F.) Dr. Strudwick's treatment plan noted that "[i]t is difficult to treat chronic headache symptoms and it is likely that the patient will have neurological residuals from her fall [in August 2012] for the rest of her life." Dr. Strudwick further noted that Plaintiff's "low back symptoms are associated with her mechanical problems including her disk herniations in the lumbar spine. She may require lumbar epidural steroid injections or selective facet injections." (*Id.* at 473.)

**July 2, 2014**: Plaintiff reported continued "pain in her low back" and migraines. (AR 467, Ex. 6F.) On examination, Plaintiff showed "tenderness in her paraspinous musculature with decreased range of motion in her low back." (*Id.*) Dr. Strudwick opined:

> It is not quite clear how we can help her. Her MRI is not indicative of any significant disk pathology at this time. I may recommend that she see Dr. Chan and see if there is any advice with respect to ongoing soft tissue issues.

(*Id.*)

**October 1, 2014**: Plaintiff continued to report "low back pain" and her MRI demonstrated "an L3-4 3-mm broad-based disk herniation and a posterolateral disk herniation at L5-S1 on the right side with a right paracentral disk herniation at L2-3." (AR 465, Ex. 6F.) Dr. Strudwick notes that Plaintiff underwent an "epidural injection" and "a selective facet block in anticipation of a radiofrequency ablation," neither of which were "effective in relieving her symptoms." (*Id.*) Dr. Strudwick's treatment plan, states:

> From a surgical perspective, there is nothing I can offer her at this time, but I suggest that when she is ready to have surgery, she should consult a spine surgeon. It is not likely that she will be able to bend, stoop, squat and do any sort of heavy lifting as a result of her low back symptomatology. She should, however, continue with independent core strengthening exercises.
>
> She has had some benefit from the trigger point injections in her upper trapezius region with respect to her cervical spine. There should be some reservation for her to have further treatment for her cervical spine in case there are flares. She is not having any radicular upper extremity symptoms.

(*Id.* at 465-66.)

Although the ALJ is not required to discuss every treatment record in detail, she cannot rely on portions of a treatment record while ignoring conflicting evidence contained within the same record. *See Holohan*, 246 F.3d at 1207-08. Here, the ALJ afforded Dr. Strudwick's opinion "little weight" despite the fact that his treatment notes during the relevant adjudicatory period appear consistent with the findings in his medical source statement. Dr. Strudwick's opinion is also consistent with his previous opinions regarding Plaintiff's ability to work. In March 2014, Dr. Strudwick opined that Plaintiff's condition precluded her from performing her duties as a manager at Circle K. Dr. Strudwick further opined in March 2014 that Plaintiff would be unable to perform basic household chores, care for her disabled husband, or lift more than 10 pounds for a period of "3-6 months." In October 2014, Dr. Strudwick opined that "[i]t is not likely that [Plaintiff] will be able to bend, stoop, squat and do any sort of heavy lifting as a result of her low back symptomatology." (AR 465, Ex. 6F.)

The ALJ noted Dr. Strudwick's March 2014 and October 2014 opinions but asserted that they were unsupported by "treatment notes, objective diagnostic studies and clinical findings." (AR 29.) As detailed above, however, Dr. Strudwick's opinions are supported by his *own* treatment notes, objective diagnostic studies, and clinical findings regarding Plaintiff's cervical and low back conditions. Further, "[t]o say that medical opinions are not supported by objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity" required by the Ninth Circuit, "even when the objective factors are listed seriatim." *Embrey*, 849 F.2d at 421. The ALJ must instead "set forth his own interpretations and explain why they, rather than the doctor[']s are correct." *Id.* Here, the ALJ failed to do so.

The ALJ further erred by failing to offer any substantive basis for her conclusion that Plaintiff's "conservative treatment," which treatment records indicate included steroid and block injections, daily pain medication, acupuncture, and physical therapy, undercuts Dr. Strudwick's medical source statement. *See Trevizo*, 871 F.3d at 677 (noting that "[t]he failure of a treating physician to recommend a more aggressive course of treatment, absent more, is not a legitimate

13

reason to discount the physician's subsequent medical opinion about the extent of disability."). Given Dr. Strudwick's assertion in October 2014 that Plaintiff was not a good candidate for surgery,[4] it is unclear whether more aggressive treatment options were appropriate or even available to Plaintiff. *See Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) (noting that "[a] claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist.").

Similarly, the ALJ asserts that Dr. Strudwick's "recommendation that the claimant should continue performing core-strengthening exercises is inconsistent with the drastic limitations set forth in the medical source statement," but fails to explain *how* that recommendation is inconsistent. In other words, the ALJ does not explain how Dr. Strudwick's recommendation regarding exercise conflicts with any of the specific limitations noted in Dr. Strudwick's source statement. *See Embrey*, 849 F.2d at 421 (noting that "it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physician['s] findings.").

The ALJ also rejected Dr. Strudwick's opinion because "the claimant's activities contradict his opinion." (AR 29.) Earlier in her opinion the ALJ noted that "[c]ontrary to the alleged symptoms and limitations, the claimant was able to drive, exercise by walking 1 mile, three times a week for about 30 minutes and work as an in home care provider." (AR 28.) However, the ALJ again selectively picks from the record. The July 2014 mental status examination report cited by the ALJ notes: "[Claimant] indicated that she is able to drive and prepare simple meals, *but needs help with household chores, shopping, and laundry because of pain*." (AR 443, Ex. 3F (emphasis added).) Further, the other records cited by the ALJ contain no mention of Plaintiff "walking 1 mile, three times a week for about 30 minutes."[5] There is also no indication from the records cited by the ALJ that Plaintiff continued working as an in-home care provider for her disabled husband *after* Dr. Strudwick submitted the "Unable Spouse Medical Form" to the City and County of San

---

[4] A treatment record from Dr. David Smolins dated August 28, 2014 notes that he also discussed with Plaintiff "the possibility of surgical referral due to her age and multilevel disc disease," but "[s]he may not be an ideal candidate." (AR 463, 5F.)
[5] Plaintiff testified at the July 2016 hearing that she is able to "drive short distance[s]" for "[a]bout 15, 20 minutes," and can walk "[a]bout two blocks." (AR 62.)

14

Francisco Department of Human Services in March 2014. (*See* AR 378, Ex. 1F.)

Finally, in assigning "little weight" to Dr. Strudwick's opinion, the ALJ failed to "consider factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion" as required under 20 C.F.R. § 404.1527(c)(2)-(6). *See Trevizo*, 871 F.3d at 676. Again, "[t]his failure alone constitutes reversible legal error." *See id.*

\*\*\*

Given the Court's conclusion that the ALJ's evaluation of the medical opinion evidence constitutes reversible legal error, the Court declines to consider Plaintiff's additional arguments. The ALJ's errors in evaluating the opinion evidence of Dr. Chin-Garcia and Dr. Strudwick were not harmless and thus the ALJ's decision must be reversed. *See Molina*, 674 F.3d at 1122 (an error is harmless if it is "inconsequential to the ultimate nondisability determination").

## II. Remand or Credit-As-True

Plaintiff insists that remanding for "further development of the record would serve no useful purpose" and the "Court should remand for an immediate award of benefits." (Dkt. No. 18 at 24.) The Court disagrees.

When courts reverse an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). A remand for an award of benefits is proper, however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (internal quotation marks and citation omitted).

Here, there are outstanding issues that must be resolved before a final determination can be made because the ALJ failed to provide legally sufficient reasons for rejecting the medical opinions of treating physicians Dr. Chin-Garcia and Dr. Strudwick, both of whom opined that Plaintiff was unable to work due to disability. If those opinions are accepted, they establish that

Plaintiff is disabled for two reasons: (1) the ALJ stipulated during the July 2016 hearing that if she agreed with either opinion, then "there would be no work in the national economy"; and (2) the VE testified regarding the inability of an individual with Plaintiff's specific limitations—as described by Dr. Strudwick's medical source statement—to sustain work.[6] (AR 76, 79-80.) Thus, the ALJ must reassess the medical opinion evidence as a whole, explain the weight afforded to each opinion, and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting some doctors' opinions over others.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this order.

This order disposes of Docket Nos. 18 and 23.

**IT IS SO ORDERED.**

Dated: January 2, 2019

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

---

[6] During the July 2016 hearing, the ALJ proposed a hypothetical to the VE based on the limitations set forth in Dr. Strudwick's medical source statement. (*See* AR 79-80.) The VE testified that based on those limitations, Plaintiff would be unable to perform her past work and there was no other work in the national economy that Plaintiff could perform. (*Id.*)